**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

URBAN CART INC., et ano,

                    Plaintiffs,

     -against-

AUDREY BRETILLOT, et al,

                   Defendants.

-----------------------------------------------------------------x

AUDREY BRETILLOT,

                  Plaintiff,

     -against-

CLIVE BURROW, et al,

                  Defendants.

-----------------------------------------------------------------x

Civil Action File No.
14-cv-07599 (JGK)(MHD)

Civil Action File No.
14-cv-7633 (JGK)(MHD)

**MEMORANDUM**
**OF LAW IN**
**SUPPORT OF MOTION TO**
**DISMISS BRETILLOT'S**
**SECOND AMENDED**
**COMPLAINT**

## STATEMENT OF THE FACTS

Audrey Bretillot has now filed three (3) versions of her complaint, one of which necessitated a motion for a more definite statement, two of which necessitated dismissal motions.

Hopefully this frivolous case will be brought to a conclusion now, rather than result in yet a fourth motion based upon a fourth rewrite of the facts.

Bretillot's Second Amended Complaint ("Complaint") is based upon her alleged ownership of the copyrights in four (4) maps for which she obtained copyright registrations many years after her supposed creation of the maps, and on each of which she had affixed copyright notices indicating not herself – but her employer, the company jointly owned by herself and her

defendant husband – as the copyright owner in which "All rights [were] reserved".

        According to the factual content – as opposed to the conclusory legal allegations – *by her own account* Bretillot is not the owner of the copyrights and had no right to file copyright registrations in her own name, and when she did file the applications she left out some vital facts which if known to the Copyright Office would no doubt have led to the denial of Ms. Bretillot's applications, including the identity of the "author" – her employer.

*Map 1*

        Bretillot allegedly created this map in 2005, affixing a copyright notice on it which said "© 2005 NYTAB, Inc. All rights reserved" while working for NYTAB, Inc. ("NYTAB"), a corporation of which she and her husband were each officers and 50% shareholders, which among other things created and marketed tourist maps. It was allegedly first published November 1, 2005. However, when she registered it eight and a half (8 ½) years later, some eight (8) months after she and her husband had become estranged and she had fired him from NYTAB's successor, she made no mention of NYTAB or her husband in the application but claimed to be the owner in her own name, actually using as her deposit copy a copy bearing the NYTAB copyright notice  (Exhibit A, ¶¶ 9, 10, 11, 31, 36, 37; Exhibit B).

*Map 2*

        Map 2 was allegedly created by Bretillot in 2008, while she was working for New York TAB, Inc., a corporation of which she and her husband were each officers, with her owning 51% of the shares, while he owned 49%. It was first published April 8, 2008. On this map she

affixed a copyright notice "© 2010 New York TAB, Inc. All rights reserved www.nytab.com".[1]

Six (6) years later – again only after she and her husband had become estranged and she had fired him from New York TAB – she filed a copyright registration application claiming to be the sole author and making no reference to New York TAB or Burrow. (Exhibit A, ¶¶ 9, 13, 14, 15, 16, 17, 22, 32, 36; Exhibit C)

*Map 3*

Bretillot allegedly created this map in 2010, while a 51% shareholder and an officer of New York TAB, and affixed the copyright notice "© 2010 New York TAB, Inc., all rights reserved".  Four (4) years later, in April, 2014, again not until after the parties' 'estrangement' and Mr. Burrow's termination by Bretillot, Bretillot filed a copyright registration of the map with the New York TAB copyright notice but claiming copyright in herself. (Exhibit A, ¶¶ 9, 13, 14, 23, 32, 36, 37; Exhibit D).

*Map 4*

And Map 4, which Bretillot likewise claims to have created in 2010, bore the same New York TAB copyright notice as Map 3. And here again Bretillot filed a registration application four (4) years later, after the estrangement and firing, again naming herself as the sole owner and author, and using as the deposit copy a map bearing the New York TAB copyright notice. (Exhibit A, ¶¶ 9, 13, 14, 32, 36, 37; Exhibit E)

---

[1]  We are aware that the copyright notice for Map 2 is dated two (2) years later than the supposed creation and first publication of the map; but it is Bretillot's confused pleading, not ours. "[W]hat a tangled web we weave, When first we practice to deceive!" - Sir Walter Scott

**POINT ONE**

**THE COMPLAINT LACKS**
**FACIAL PLAUSIBILITY**

In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable. The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. Ashcroft v. Iqbal, – U.S. – , 129 S. Ct. 1937 (2009); Bell Atlantic Corp. v. Twombly, – U.S. – , 127 S. Ct. 1955 (2007). *See, e.g.*, Jovani Fashion v. Fiesta Fashions, 500 Fed.Appx. 42 (2d Cir. 2012) (Summary Order), *cert. denied*, – U.S. – , 133 S. Ct. 1596 (2013).

In order to have facial plausibility, the complaint's *factual* content must suffice to enable the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Wager v. Littell, 549 Fed.Appx. 32 (2d Cir. 2014) (Summary Order). In Wager the Second Circuit simply looked at the infringing and infringed copies attached to the complaint, and based on those exhibits concluded that they were not sufficiently similar for a reasonable jury to find striking similarity, and dismissed.

Likewise, in Jovani Fashion v. Fiesta Fashions, *supra,* the court conducted an "independent review of the record" upon which it based its decision affirming the lower court's dismissal of the complaint: "Upon independent review of the record, we conclude, largely for the reasons stated by the district court in its thorough and well-reasoned opinion, that Jovani failed to satisfy its pleading burden."

While the Court should construe the *factual* allegations in the light most favorable to the plaintiff, the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to *legal* conclusions. <u>Jovani Fashion v. Cinderella Divine, Inc.</u>, 808 F.Supp.2d 542 (SDNY 2011), *aff'd*, 500 Fed. Appx. 42 (2d Cir. 2012)(Summary Order), *cert. denied*, – U.S. – , 133 S. Ct. 1596 (2013).   And the court can consider the exhibits attached to the complaint, even where[2] they contradict the verbal averments of the complaint. *Id.*

In the instant case, the Court has but to read together the words in the Complaint and the exhibits appended to the complaint to see that plaintiff's copyright registration was obtained falsely, and that Bretillot was not the owner of the copyright, but that – as she herself represented publicly for eight and a half (8 1/2) years – "all rights [were] reserved" in NYTAB and later in New York TAB.

Applying <u>Iqbal</u> and <u>Twombly,</u> in a case where the complaint alleged copyright infringement but disclosed the existence of a license agreement between the parties, the court in <u>TufAmerica v. Orchard Enterprises</u>, 2011 WL 4946663 (SDNY 2011)(Scheindlin, J.), reasoned as follows:

> In deciding a motion to dismiss, a court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in Ashcroft v. Iqbal. First, a court " 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.' " "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." To survive a Rule 12(b)(6) motion to dismiss, the

[2] Perhaps *especially* where they contradict the verbal averments of the complaint.

allegations in the complaint must meet a standard of "plausibility."
A claim is facially plausible "when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged.".....

"In considering a motion to dismiss for failure to state a claim
pursuant to Rule 12(b)(6), a district court may consider the facts
alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the
complaint." ...

TufAmerica alleges that (1) "TufAmerica delivered thousands of
musical recordings to Digital under the License;" (2) "Orchard
assumed Digital's rights under the License;" (3) the terms of the
License required Orchard, and Digital before it, "to pay
TufAmerica ... mechanical royalties;" and (4) TufAmerica never
received any payments of mechanical royalties. Orchard in turn
argues that the License preempts any copyright claim.

TufAmerica fails to state a facially plausible claim under the
Copyright Act because it concedes that its copyright claim is
governed by the License, not the Copyright Act. While TufAmerica
subsequently argues that the License does not govern mechanical
royalties, a "claim for relief 'may not be amended by the briefs in
opposition to a motion to dismiss.' " As a result, Orchard's motion
to dismiss is granted.

Id. at 1-3.

In the instant case, the factual content of the complaint, including the exhibits,

belies any of the self serving conclusory allegations plaintiff makes. Plaintiff simply cannot hide

from the inescapable fact that by her own account she, the alleged sole creator of the maps,

consistently and repeatedly represented to the world, and to her husband and partner, that her

employers, NYTAB and then New York TAB, were the owners of the copyrights, by affixing

copyright notices bearing those corporations' names exclusively on the maps in question.

Even the deposit copies for plaintiff's copyright registration applications bore the

copyright notices of the corporations, not of Ms. Bretillot.

During the entire period of the works' alleged creation, Bretillot by her own admission was working as an officer of the respective corporations, and *by her own admission* it was the corporation, not she, who owned, distributed, and sold advertising in, the maps.

Whether the works were her sole creation as she claims, or works of joint authorship as Burrow claims, the copyrights were indisputably, in all respects and at all times, the property of the corporations, and not of the individual shareholders, as stated correctly in the copyright notices. As stated in 17 U.S.C. § 201(b): "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."[3]

Ms. Bretillot's complaint, in which she admits to having personally affixed copyright notices not bearing her name but the names of her employer, over a period of at least eight and a half (8 ½) years, is an extreme case of a pleading which lacks "facial plausibility", since its factual content casts fatal doubt on its ultimate claim, thus negating any possible showing of facial plausibility.

---

[3] It is axiomatic that where the corporation's business is creating and marketing tourist maps, the tourist maps created for the corporation by an officer are works for hire absent a written instrument signed by both parties to the contrary. See, e.g. In re Simplified Information Systems, Inc., 89 B.R. 538 (USDC WD PA 1988).

## POINT TWO

### THE COPYRIGHT REGISTRATIONS FOR MAPS 1 AND 2 HAVE NO EVIDENTIARY WEIGHT UNDER THE COPYRIGHT ACT

The copyright registration certificates for Maps 1 and 2 have no evidentiary weight, because they were obtained more than five (5) years after first publication. 17 USC § 410(c).

## POINT THREE

### THE COPYRIGHT REGISTRATIONS FOR MAPS 3 AND 4 SHOULD BE ACCORDED NO EVIDENTIARY WEIGHT

Although the registration certificates for Maps 3 and 4, submitted four (4) years after first publication, are *prima facie* evidence of the validity of the copyrights, "The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court". 17 USC 410(c); Blum v. Kline, 1988 WL 52916 (SDNY 1988) (Keenan, J.)

Under the circumstances of this case, the Court should afford *no* weight at all to the registrations for any of the maps, since:

(A) Over the period of eight and a half (8 ½) years during which the maps were being distributed bearing the copyright notices of NYTAB and New York TAB, which Bretillot as the 'sole creator' must have affixed, no copyright registrations were filed by anyone – i.e. not a single copyright registration was filed in the ordinary course of business;

-8-

(B) Eight (8) months after Bretillot and Burrow became estranged and Bretillot fired Burrow from his employment with the corporations, only then did Bretillot take it upon herself to file registrations of the corporations' maps in her own name, omitting all reference to the corporations and to Burrow; clearly the filings were for litigation purposes only;

(C) Even by Bretillot's false account of herself as the sole map creator, Burrow was not some stranger to the maps, but a 50% shareholder and then a 49% shareholder, and in both cases an officer, in the companies which owned, distributed, and sold advertising in, the maps, so had Burrow been as unscrupulous as Bretillot was, it could as easily have been he rather than Bretillot that filed a false registration claiming sole ownership and authorship in himself;

(D) If the registrations were to be afforded any weight against a stranger, they should not be afforded weight in an action against someone who owned 50% and 49% interests in the companies whose name appeared in the copyright notices, and who saw and worked with and distributed and sold advertising in the maps every day, and had every right to rely on the substance of the copyright notices they bore;

(E) Bretillot's affixing false copyright notices would have been a criminal act. 17 U.S.C. § 506(c); and

(F) Bretillot's procurement of copyright registrations of maps in her own name, without Burrow's consent, was flagrantly in breach of her fiduciary duties to the corporations and to Burrow.

Under the circumstances of this case, the copyright notices, which were consistent throughout the time period of the maps' creation and publication, and which were used consistently and repeatedly in the ordinary course of business to indicate the ownership of the

-9-

copyrights, and which were known to both parties and accepted by both parties, are far more

reliable indicia of ownership than Bretillot's registration certificates, which were obtained

unilaterally, and which are belied by the underlying facts, belied by the very deposit copies

Bretillot deposited with the registration applications, and obtained solely and exclusively for the

purposes of gaining a cheap advantage in litigation.

## CONCLUSION

The complaint has no facial plausibility and should be dismissed with prejudice.

**RAY BECKERMAN, P.C.**

By: _____

Ray Beckerman
Attorneys for Clive Burrow
and Urban Cart Inc.
108-18 Queens Blvd. 4th Fl.
Forest Hills, NY 11375
(718) 544-3434
ray@beckermanlegal.com

Ray Beckerman,
      Of counsel.